## Case No. 14,157.

### TREADWELL v. JOSEPH.

[1 Sumn. 390.] 1

Circuit Court, D. Massachusetts.   May Term, 1833.

PLEADING IN ADMIRALTY—FORM OF LIBEL—DEFENCES—JUSTIFICATION—BURDEN OF PROOF—MARITIME TORT.

1. In admiralty causes of damage, the libel should state each distinct act of injury in a distinct article, with reasonable certainty of time and place.

[Cited in Pettingill v. Dinsmore, Case No. 11,045.]

2. Where a defence is put in, by way of justification, it must admit the facts.

3. Where the act is relied on as a punishment, it must be so pleaded.

4. In cases where a justification is set up, the onus probandi is on the respondent.

[Cited in The Rhode Island, Case No. 11,745.]

5. Decree for damages for wrongful assault and imprisonment.

[Appeal from the district court of the United States for the district of Massachusetts.

[This was a libel for damages for personal injury by Charles Treadwell against Harry Joseph. From a decree of the district court in favor of defendant (case unreported), libellant appealed.]

STORY, Circuit Justice. This is a suit brought in the admiralty by the original libellant, now appellee, against the appellant, who was the original respondent, in personam, in what is technically called a cause of damage. The charges in the libel are of gross maltreatment, and wrongful assault, and imprisonment of the libellant, who was a seaman on board the ship Forum, by the re-

1 [Reported by Charles Sumner, Esq.]

spondent, who was commander thereof, on the high seas, and within the jurisdiction of the court. The matter in the libel resolves itself into two distinct charges, each of which ought to have been propounded in a distinct article, with reasonable certainty of time and place, instead of being mixed together in one general statement; for they were not contemporaneous, nor in any exact sense a continuation of the same injurious proceeding. I cannot but express my regret at finding this anomalous and loose course of practice so long pursued; and I trust it will soon be reformed by more exact pleadings.

The first charge is, that the respondent did with force and violence, without rightful cause of justification, order the libellant to scrape down the masts of the ship for a long space of time, to wit, for fourteen hours, the wind then blowing heavily. The answer of the respondent to this charge is, "that the scraping of the masts of a ship is a necessary duty, and proper to be performed by the mariners thereof; and that, if the libellant was employed in that manner, it was a part of the ship's duty, which the libellant was bound by his enlistment on board the vessel to perform." Now, this answer is insufficient, both in matter and form. It neither admits nor denies the act complained of; but states conditionally, that, "if the libellant was employed, &c., it was a part of the ship's duty," &c. It is clear, upon the first principles of all responsive pleadings, that the party, who sets up a justification or excuse of any act, must admit the existence of that act; and if he denies it, his denial must be in positive terms. A defensive allegation in the admiralty equally as much requires this certainty, as a plea at the common law. A party cannot put forth a sort of middle and speculative answer, neither admitting nor denying any thing. He should meet the charge of the libel with direct allegations. Besides, the answer does not reach the gravamen of the charge. Admitting it to be a part of the duty of the crew to scrape the masts, it is to be done at proper times and seasons, and in a reasonable manner. If it is required under circumstances of oppression, or wantonness, out of mere resentment, the order is not justifiable, nor the duty demandable. A seaman is not a slave; he is entitled to fair treatment; and is not to be overcharged with duty from caprice or dissatisfaction. Hence, whenever the act is charged as oppressive, it should be specially shown, that it was proper on the particular occasion, and was not oppressive. On the other hand, if it be inflicted as a punishment, the cause should be specially set up, and shown to be a justification. In the present case, giving the utmost effect to the averments of the answer, it does not show, that such a prolonged duty for such a period of time was either proper or necessary for the occasion. And it is impossible to sustain the answer, as insisting upon it as a mode of

punishment. And yet the whole scope of the evidence leads the mind almost irresistibly to the conclusion, that it was required, as a mode of punishment for some incorrect conduct towards the master. I am compelled, therefore, to say, that not being justified in the pleadings, as a punishment, and yet being in fact such, it stands in the actual presentation unexcused. Indeed, if the testimony introduced into the cause by the master for another purpose, be true, the proceeding would deserve no small reprehension; for it would then appear, that the libellant was at the time known to be seriously indisposed, and in some sort wandering in his mind.

The other charge is of a more serious character, though in its frame it is quite too loose and inartificial. It is, that afterwards the master illegally and unjustifiably deprived the libellant of his food, keeping him upon rice-water and physic; and without cause imprisoned him in the hold of the vessel; and blistered him, and shaved his head, and lashed his hands behind him, and bound him to a stanchion below, whereby from the steam of the cargo (coffee) he was nearly suffocated, and he was deprived of sleep. The answer to this charge asserts in substance, that the libellant complained of pains in his head and back, and medicine was accordingly administered to him; that on the next morning he appeared more ill, and exhibited marks of derangement of mind, and the respondent thought it necessary to bleed him; and afterwards, the libellant still continuing in the same delirious state, the respondent caused his head to be shaved and blistered, and blisters also to be applied to his neck; that he caused the libellant to be placed in the steerage between decks, near the after hatch, where he could enjoy fresh air, and at the same time be protected from the weather and from disturbance from the crew; and in order to prevent him from wandering about the ship in the state of delirium, in which he was, the respondent confined him to a stanchion for about two days, until he recovered his mind, and became sufficiently rational to be trusted.

If this statement be true, it certainly amounts to a justification. But I am of opinion, that nothing short of substantial proof of the facts can sustain it, as a defence. Even if the respondent acted with entire good faith, but the libellant was not in a state of derangement or delirium, the defence must fail, although a mere mistake of judgment would certainly go very far in mitigation of damages. The onus probandi is here on the respondent; and unless he clears away every reasonable doubt, he must take upon him the consequences of his rashness, or want of skill. Now, I must say, that the evidence has, in my judgment, wholly failed to establish any clear, unequivocal case of derangement or delirium. And the conduct of the master seems to me to show

an undue precipitancy, and a good deal of harshness and severity, uncalled for by the occasion. Nor am I able, upon examining the evidence, wholly to escape from the suspicion, that there were mixed up in these medicinal administrations some ingredients of resentment and punishment. The prescriptions were not so mild in their nature, nor the nursing so gentle or cautious in its quality, as to remove all doubt, that some wholesome correction for past faults mingled its share in the discipline.

If I were to reverse the decree of the district judge, it would be to act upon a mere private opinion, which disregarded the weight of evidence. My opinion is, that it ought to be affirmed, with costs. Decree accordingly.